SIMON (ROEMER v.).   See Cases Nos. 11,-997 and 11,998.

## Case No. 12,874.

### SIMONDS v. BLACK RIVER INS. CO.[1]

Circuit Court, D. Connecticut.   July 19, 1877.

NEGOTIABLE INSTRUMENTS— CHECKS — DEMAND — NOTICE OF DISHONOR—LACHES.

[1. A drawee to whom a collecting agent mails a check for collection is a sub-agent, and the holder is chargeable with his sub-agent's negligence either in presenting to himself or in giving notice of dishonor.]

[2. Delay due wholly to the postal service does not charge a collecting agent with notice of the dishonor of a check which he has mailed to the drawee for collection.   Bailey v. Bodenham, 16 C. B. (N. S.) 265, distinguished.]

[This was an action at law on a dishonored check by Jehiel H. Simonds against Black River Insurance Company. Verdict was given for plaintiff.]

Henry C. Robinson, for plaintiff.
William Hamersley, for defendants.

SHIPMAN, District Judge.   This is a motion by the defendants for a new trial, alleging that the court erred in the charge to the jury, and that the verdict was against the weight of evidence.   The case was as follows: The defendants. a fire insurance company located in Watertown, New York, were indebted to the plaintiff of Warehouse Point, Connecticut, upon a policy of insurance against loss by fire.   In payment of this debt, they sent to the plaintiff their check to his order upon George F. Paddock & Co., bankers in Watertown, for the sum of $2,471.33 "payable in New York current funds."   It was not denied that this phrase is equivalent to, payable in Paddock & Co.'s check upon a New York City bank or banker.   This check was received by the plaintiff either at Warehouse Point. twelve miles from Hartford, on January 6th, or at Hartford on January 7th.   On January 7th he endorsed and delivered the check to the Phœ-

[1] [Not previously reported.]

nix National Bank of Hartford, for collection. The cashier of said bank testified that on the afternoon of January 7th he transmitted it by mail to George F. Paddock & Co., at Watertown, for payment, with request to remit to said bank. The cashier of Geo. F. Paddock & Co. testified that said firm received the check by mail on the 13th January, and on the same day on which it was received he returned to the Phœnix Bank by mail a check of Paddock & Co. upon their corresponding bank in New York City. There was no other evidence in regard to the time when the check was received at Watertown, or the time when payment was returned to the Phœnix Bank. Paddock & Co.'s check was received by the Phœnix Bank January 20th, and was forthwith sent to New York for collection. They failed on January 18th and did no business after January 16th. Their checks upon New York were paid until January 15, 1875. The check of Paddock & Co. was promptly returned from New York, protested, and due notice of dishonor was given to all the parties upon the insurance company's check. The defendants had at least $9,572 on deposit with Paddock & Co. continuously from January 1st to January 18th. If the check had been received by Paddock & Co. in due and regular course of mail after January 7, 1875, it would have been paid. Twenty four hours is the regular time of transit of the United States mail between Hartford and Watertown. The Phœnix Bank did not notify the insurance company or the plaintiff of the non-return of plaintiff's check, or the non-ceipt of payment until the protested check was returned from New York. The bank between January 7th and January 20th wrote to Paddock & Co. asking if they had received the letter containing plaintiff's check. As a defense to an action of the plaintiff against the insurance company upon the original check, the defendants insisted that through the laches of the collecting agent of the plaintiff, the defendants suffered from the failure of said Paddock & Co. a loss equal to the amount of said check, and especially requested the court to charge the jury that the plaintiff was guilty of laches because his collecting agent did not notify the insurance company of the non-payment of the plaintiff's check, or the non-return of a New York check from Paddock & Co. at and after the time when the latter check should have been received by said bank in regular course of mail.

The court charged the jury that the Phœnix Bank was the agent of the plaintiff, and for any laches of the bank resulting in loss to the defendants, the plaintiff was responsible; and furthermore if the delay in the reception of the plaintiff's check at Watertown was due to a misdirection of the letter in which it was contained, or if the check was not put into the mail, as testified by the cashier, or if the delay was owing to any act of the bank, and by such delay a loss had occurred to the insurance company, the defendants were not liable. The court also charged that if the person at Watertown to whom the check was sent for collection, did not promptly make presentment and demand upon Paddock & Co. or if time was given for payment, or if the sub-agent delayed notifying the drawer in case of non-payment, such delay or extension of payment would discharge the defendants, a loss resulting from such laches having been proved, and it being admitted that the check was sent directly to Paddock & Co., if they kept it unpaid beyond the day on which it was received, without notification of dishonor, such laches (a loss having occurred in consequence of the delay) would release the maker.

The court submitted two questions of fact to the jury: 1st. Was the delay in the transmission of the plaintiff's check due to a cause other than any act or neglect of the Phœnix Bank? 2nd. Was the New York check returned by Paddock & Co. on the day of the receipt of the plaintiff's check? And instructed the jury if either question was answered in the negative to return a verdict for the defendants, and declined to charge as requested by the defendants that the bank in not notifying the defendants of the non-payment of the check when in due course of mail the New York check should have been returned was guilty of laches, to which refusal the defendants excepted. The jury returned a verdict for the plaintiff.

The drawer of a check is liable to the holder for the amount of the check, notwithstanding delay in its presentment for payment, unless loss has been sustained by the drawer in consequence of undue delay in the presentment. The holder is obliged to exercise due diligence so far as the drawer is concerned, simply to avoid the contingency of loss to him which may happen, if, pending the unreasonable delay, the bank should fail. It is therefore prudent for the holder to promptly present for payment either by himself or his agent. If a check upon a distant banker is promptly entrusted to a collecting agent for collection, and is forwarded by the agent by the mail of the same day, or of the next day,—Hare v. Henty, 10 C. B. (N. S.) 65; Richford v. Ridge, 2 Camp. 537,—properly directed, the holder is not liable for delays which may subsequently arise solely due to the postal service. But if the sub-agent to whom it is entrusted for collection is guilty on his part of laches in presentment, demand, or notice of non-payment, by reason of which laches the maker suffers loss, the holder is responsible for the laches of the sub-agent. When the collecting agent sends the check to the drawees, they are thereby constituted the agents of the holder to present to themselves, and if they are negligent in making presentment, or in giving notice of dishonor, the holder is respon-

sible. Here consists the danger of sending checks directly to the drawees, for the holder thereby puts himself in their power to cause undue delay. But if the drawees either promptly pay in accordance with the terms of the check, or promptly give notice of dishonor, no loss has happened to the drawers.

In this case, the jury found that the Phœnix Bank promptly remitted the check and that the drawees promptly paid it in accordance with the requirements of the check as soon as it was received. The holder and his agents and the drawers alike performed the duties which were incumbent upon them of presentment and payment. That the fact of the delay in the receipt of the check at Watertown was evidence of laches was assumed throughout the trial, and in the charge, and the jury were instructed to find whether the delay was attributable to the collecting agent or to the mail.

But the defendants insist that although the delay was solely in the mail, the Phœnix Bank should have notified the defendant that no answer had been received from Paddock & Co. by due course of mail, and that the absence of an answer should have been considered as a dishonor, and notice of such dishonor should have been given; and reliance is placed upon Bailey v. Bodenham, 16 C. B. (N. S.) 265. In that case the collecting agent sent the check to the drawees on Saturday, May 9th, who received it on the 10th, kept it unpaid till the 15th and then (having stopped payment in the meantime) returned it to the collecting agent. Este, C. J., says: "Assume that the City Bank adopted a usual and proper course in sending the check by the post to the drawees, and I am rather inclined to think that that would be a good presentment. They thereby constituted them their agents to present to themselves. If so, and the check was dishonored, they clearly ought to have given notice of the non-payment in a reasonable time. Either, therefore, the transmission by post was no presentment at all, or, if a due presentment, then the check was presented and dishonored on Monday the 11th, and no notice of dishonor was given until Tuesday the 19th. In either view there was a want of due diligence. I do not mean to affirm that this was a good presentment. I incline to think it was. But, unless the money was remitted by return of post, the absence of an answer should have been considered as a dishonor, and notice of such dishonor should have been given promptly." The learned judge is here evidently speaking in reference to the facts of the case. The check had been received by the drawees on the 9th, had been retained unpaid until the 15th, and then had been returned without notice of dishonor. The check having been duly received, unless the money had been sent by return post. the absence of an answer should have been considered as a dishonor. The chief justice proceeds upon the assumption that the obligation to give notice to the drawer is based upon the fact of dishonor. But, in the absence of laches, until the check has been presented to solvent drawees, it is not dishonored. Inasmuch as the bank had placed themselves in the power of the drawees by sending directly to them, it would have been abundant caution to have assumed that the check was dishonored; but in this case the assumption would have been without foundation. The defendants themselves adopted the somewhat unusual course of sending from Watertown to a creditor in Connecticut their check upon their Watertown bankers which was payable in a check upon New York. They compelled the plaintiff to undergo the risks of delays of payment from the sundry necessary transmission of the checks by mail. They assumed also the same risks of loss to themselves by possible delays in mail transmission. If there were delays solely by mail, there is no obligation upon the plaintiff to inform him of such delay, though it might have been the part of prudence for him to do so.

In regard to the point that the verdict was against the weight of evidence, the questions were purely of fact, there was no serious conflict of testimony, and I think that the jury were justified in coming to the conclusions which they indicated by their verdict. The motion for new trial is denied.